IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| RACHEL DIMARTINO, | * |
| Plaintiff, | * |
|  | * |
| v. | *    Civil Action No. RDB-15-3788 |
|  | * |
| REMEDI SENIORCARE, | * |
| Defendant. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Rachel DiMartino ("Plaintiff" or "DiMartino"), previously employed as a pharmacist by Defendant Remedi SeniorCare of Virginia, LLC[1] ("Defendant" or "Remedi"), brings this action alleging violations of Virginia common law and 10 U.S.C. § 2409.[2] Specifically, Plaintiff claims that she suffered wrongful discharge and retaliation by Defendant after she complained about certain Remedi pharmacy practices.

Presently pending is Defendant's Motion to Dismiss the Amended Complaint (ECF No. 23). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 23) is GRANTED WITH PREJUDICE.

## BACKGROUND

---

[1] Plaintiff incorrectly names "Remedi SeniorCare" as Defendant in her Amended Complaint (ECF No. 14). As reflected *supra*, Remedi SeniorCare of Virginia, LLC, a Maryland corporation, headquartered in Towson, Maryland, is the correct name of Plaintiff's employer. *See* Mem. in Support of Mot. to Dismiss, 1 n.1, ECF No. 23-1. The Clerk of the Court is directed to re-caption this case accordingly.

[2] 10 U.S.C. § 2409 is an anti-retaliation statute that applies to defense contractors. 10 U.S.C. §§ 2409(a), (g)(1). As discussed *infra*, it is undisputed that Defendant Remedi holds no contract with an agency covered by this statute.

At the motion to dismiss stage, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This action arises from Plaintiff Rachel DiMartino's employment as an overnight shift pharmacist at the Richmond, Virginia branch of Defendant Remedi SeniorCare of Virginia, LLC. Amended Compl. ¶¶ 6, 7, 9, ECF No. 14. Defendant Remedi, a Maryland corporation, headquartered in Towson, Maryland, "operat[es] an institutional pharmacy business" that has a contract with the Centers for Medicare & Medicaid Services ("CMS"). *Id.* ¶¶ 7-8. Plaintiff alleges that, "[a]lmost immediately" after her hiring in January 2014, she "recognized that Remedi's pharmacy operations were in a state of disarray." *Id.* ¶¶ 9-10.

DiMartino offers several instances when she allegedly communicated her "serious safety concerns." *Id.* ¶ 10. On May 5, 2014, she alleges that a pharmacy technician erroneously failed to provide a patient with the prescribed end-of-life sedative. *Id.* ¶ 11. She expressed her concern over this incident in an email to a colleague later that evening. *Id.* After discovering the email, Remedi General Manager Dale St. Clair ("St. Clair") allegedly admonished her for "put[ting] these things in writing" and gave her a "disciplinary document." *Id.* ¶ 12.

Throughout that summer, Plaintiff allegedly expressed concerns to St. Clair over Remedi's alleged use of Daptomycin, an antibiotic, *id.* ¶¶ 13-14; its alleged handling of intravenous (IV) components, *id.* ¶ 15; its alleged failure to follow the "dispensing limitations and specific safeguards" of the "Combat Methamphetamine Epidemic Act of 2005," *id.* ¶ 16; and a technician's mistaken preparation of IVs containing potassium, *id.* ¶ 18. With respect to the last alleged issue, DiMartino claims that, after St. Clair said that he had "taken care of"

the erroneous preparation of IVs, she "continued to observe sterile compounding without the proper documentation to ensure such a serious error would not be repeated." *Id.* ¶ 18. Moreover, she alleges that one manager, Heath McMillion, "made derogatory statements regarding [her] concerns in management meetings." *Id.* ¶ 17.

On August 31, 2014, Plaintiff allegedly instructed a pharmacy technician, Danielle Crawley ("Crawley") to fill a prescription for morphine. *Id.* ¶ 20. Another technician allegedly told Crawley that Plaintiff's instruction was "illegal." *Id.* Plaintiff claims that she was "alarmed by the accusation . . . and by Remedi's ongoing unsafe practices." *Id.* ¶ 21. Accordingly, she submitted a letter of resignation, effective September 29, 2014, to St. Clair. *Id.* She notified several colleagues at Remedi, stating that she would not continue working with the technician who accused her of ordering an illegal prescription. *Id.* ¶ 23. When DiMartino returned to work on September 8, 2014, St. Clair and the Vice President of Human Resources explained that her resignation would be effective as of that date. *Id.* ¶ 25. She refused the offered severance package. *Id.*

Plaintiff subsequently filed the present action in the Circuit Court for Baltimore County, Maryland. Notice of Removal, 1, ECF No. 1. Defendant timely removed to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. *Id.* at 1-2. Defendant now moves to dismiss the Amended Complaint (ECF No. 14) under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss, ECF No. 23.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true the factual allegations contained in the complaint, the court is not so constrained when the factual allegations are conclusory or devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Moreover, a court need not accept any asserted legal conclusions drawn from the proffered facts. *Iqbal*, 556 U.S. at 678. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her

claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 584 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*).

ANALYSIS

In moving to dismiss the subject two-count Amended Complaint, Defendant contends that Plaintiff fails to state a claim for which relief may be granted under either count. With respect to Count I, Remedi argues that, as DiMartino resigned, she cannot state a claim for wrongful discharge under Virginia law. Even if she had not resigned, none of the Virginia statutes cited by the Plaintiff permits a wrongful discharge claim in this case. Turning to Count II, Remedi contends that it is not a covered entity under 10 U.S.C. § 2409. As such, she cannot state any possible claim for relief under that statute. Each count will be addressed in turn.

## A. Count I—Wrongful Discharge

In Count I, Plaintiff claims that she was wrongfully discharged from Remedi after expressing concern over certain pharmacy practices. As a preliminary matter, Maryland adheres to the doctrine of *lex loci delicti*, which applies the law of the state in which the alleged injury occurred. *Laboratory Corp. of America v. Hood*, 911 A.2d 841, 845 (Md. 2006). Since Plaintiff's alleged injury—wrongful discharge—occurred in Virginia, this Court will apply Virginia law to her claim.[3]

---

[3] The parties agree that Virginia law applies to Count I.

Virginia applies the common law doctrine of "employment-at-will," *Lockhart v. Commonwealth Educ. Sys. Corp.*, 439 S.E.2d 328, 330 (Va. 1994), which dictates that, "when the intended contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will . . . [.]" *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 916-17 (Va. 1987). Although Virginia "strongly adheres" to this doctrine, it is not without exceptions. *Lockhart*, 439 S.E.2d at 330; *VanBuren v. Grubb*, 733 S.E.2d 919, 922 (Va. 2012). Any such exceptions, however, are narrowly construed. *VanBuren*, 733 S.E.2d at 922 (citing *Bowman, et al. v. State Bank of Keysville, et al.*, 331 S.E.2d 797, 801 (Va. 1985)).

In *Bowman*, 331 S.E.2d at 801, the Supreme Court of Virginia recognized one such exception—an employee states a "cause of action in tort against" his employer for "wrongful discharge" when the termination violates a "established public policy." This exception is not "automatically" triggered whenever an employee is terminated "in violation of the policy underlying any one [statute][.]" *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002) (quoting *City of Virginia Beach v. Harris*, 523 S.E.2d 239, 245 (Va. 2000)) (alteration in original). As "virtually every statute expresses a public policy of some sort," an automatic trigger would negate Virginia's strict adherence to the employment-at-will doctrine. *Rowan*, 559 S.E.2d at 711. Virginia thus recognizes only three situations in which a public policy wrongful discharge claim may arise: (1) when "an employer violated a policy enabling the exercise of an employee's statutorily created right," *id.* (citing *Bowman*, 331 S.E.2d at 797); (2) when "the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection

6

enunciated by the public policy," *Rowan*, 559 S.E.2d at 711 (citing *Bailey v. Scott-Gallaher, Inc.*, 480 S.E.2d 502 (Va. 1997); *Lockhart*, 439 S.E.2d at 328); or (3) "where the discharge was based on the employee's refusal to engage in a criminal act[,]" *Rowan*, 559 S.E.2d at 711; *see also Mitchem v. Counts*, 523 S.E.2d 246, 252 (Va. 2000) (recognizing refusal to engage in a criminal act as sufficient to establish a wrongful discharge claim under the public policy exception).

In this case, Plaintiff fails to state a claim for wrongful discharge under the public policy exception. This Court need not consider whether the circumstances of this case trigger the exception, as a necessary prerequisite to stating a wrongful discharge claim is that the employer did, in fact, terminate the employee. As the United States District Court for the Eastern District of Virginia has explained, "*Bowman's* breadth is '*limited to discharges* which violate . . . the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general.'" *Willis v. City of Virginia Beach*, 90 F. Supp. 3d 597, 606 (E.D. Va. 2015) (quoting *Miller*, 362 S.E.2d at 918) (emphasis in original). The employment-at-will doctrine "concerns [only] the ability of an employer . . . to *terminate* the employment relationship[.]" *Willis*, 90 F. Supp. 2d at 606. Anything short of termination by the employer, such as suspension or even constructive discharge, cannot give rise to a wrongful discharge cause of action. *Id.*; *see also Miller*, 362 S.E.2d at 918; *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1232 (E.D. Va. 1996).

DiMartino specifically alleges that she submitted a letter of resignation on August 31, 2014. She intended to continue working until September 29, 2014, yet Remedi chose to have her leave prior to that date and offered her a severance package. Voluntary resignation is

simply not termination by the employer. Plaintiff attempts to rebut the clear allegations of her Amended Complaint by arguing that her classification by the Virginia Employment Commission as "involuntarily terminated," Amended Compl. ¶ 26, is conclusive proof that she was indeed terminated. As Defendant correctly notes, however, the Virginia Employment Commission's determination concerned only her eligibility for unemployment benefits under Va. Code Ann. § 60.2-612(8). This statutory classification is entirely separate from the common law doctrine of employment-at-will. DiMartino explicitly states that she resigned from Remedi, thus she fails to state a claim for wrongful discharge under Virginia law. Count I is accordingly dismissed with prejudice.

## B. Count II—10 U.S.C. § 2409

In Count II, Plaintiff alleges that Defendant retaliated against her for engaging in protected activity in violation of 10 U.S.C. § 2409.[4] Section 2409 provides that a covered "contractor, subcontractor, grantee, or subgrantee may not . . . discharge[], demote[], or otherwise discriminate[] against [its employees] as a reprisal for disclosing . . . [g]ross mismanagement," "gross waste of funds," "abuse of authority," or "violation[s] of law" related to Department of Defense or National Aeronautics and Space Administration contracts or grants; or a "substantial and specific danger to public health or safety." 10 U.S.C. § 2409(a)(1). This prohibition, however, applies only to contractors awarded a contract with the Department of Defense; the Department of the Army; the Department of

---

[4] This Court notes that Plaintiff incorrectly labels 10 U.S.C. § 2409 as a section of the National Defense Authorization Act of 2013 ("NDAA"). Section 2409, however, predates the NDAA as a component of the Armed Forces Title of the United States Code—Title 10. The NDAA *amended* Section 2409, but did not establish the section or its retaliation provisions.

the Navy; the Department of the Air Force; the Coast Guard; and the National Aeronautics and Space Administration. 10 U.S.C. §§ 2303, 2409(g)(1).

Here, DiMartino does not allege that Remedi has a contract with any of the specified agencies. She states only that Remedi, as an institutional pharmacy company, is a contractor for the Centers for Medicare & Medicaid Services ("CMS"). CMS is not a subgroup of an agency covered by Section 2409. Rather, CMS is a federal agency within the Department of Human Health and Services. Section 2409 and its prohibition against retaliation thus do not apply to Remedi or the Plaintiff.

Plaintiff's argument in favor of applying Section 2409 is unpersuasive. She appears to contend that 41 U.S.C. § 4712, a "Pilot program for enhancement of contractor protection from reprisal for disclosure of certain information," extended the protections of Section 2409 to non-defense contractors. Pl.'s Resp. in Opp'n, 5-6, ECF No. 28. She essentially contends that, although she may not state a claim under 10 U.S.C. § 2409, she *can* state a claim under 41 U.S.C. § 4712. The Amended Complaint, however, is devoid of any reference to Section 4712. Plaintiff's argument thus concedes that Count II, which asserts a violation only of Section 2409, must be dismissed.

Even if DiMartino had asserted her claim under Section 4712, and not Section 2409, that claim must also be dismissed. She alleges neither that Remedi has a federal contract within the ambit of Section 4712, nor that she engaged in any activity protected by that section. The effects of Section 4712 extend only to "contracts and grants awarded on or after [January 2, 2013]; . . . and . . . all contracts awarded before [January 2, 2013] that are modified to include a contract clause providing for the applicability of such amendments."

National Defense Authorization Act of 2013, Pub. L. No. 112-239, § 828(b)(1). Although Plaintiff alleges that Remedi has a contract with CMS, she does not allege that the contract was awarded on or after the date on which Section 4712 came into effect.

Were this Court to assume that Plaintiff did allege a federal contract subject to Section 4712, her claim still merits dismissal because she did not participate in any activity protected by this statute. Plaintiff alleges that she disclosed Remedi's repeated violations of 42 C.F.R. § 482.25[5] and the Combat Methamphetamine Epidemic Act of 2005 ("CMEA"), Pub. L. No. 109-177, 120 Stat. 192. As a preliminary matter, neither provision applies to Defendant. 42 C.F.R. § 482.25 governs basic hospital functions, including the provision of pharmaceutical services. Remedi, however, is not a hospital. The CMEA, on the other hand, applies only to retail institutions and transactions in an effort to regulate over-the-counter sales of methamphetamines. Pub. L. No. 109-177, 120 Stat. 192. Remedi, an institutional pharmacy provider, is not a retail pharmacy, nor does it engage in retail transactions of any kind.

Moreover, the prohibitions of Section 4712 apply only to an employee's disclosure of "evidence of gross mismanagement of a Federal contract or grant . . . a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract . . . or grant." 41 U.S.C. § 4712(a)(1). Plaintiff's alleged activity—her complaints to colleagues and St. Clair, and her allegations that Remedi violated certain laws and regulations—are not covered by Section 4712. She certainly alleges concerns as to the pharmacy procedures in place at Remedi, but these concerns do not meet the high bar of "a

---

[5] 42 C.F.R. § 482.25 governs

substantial and specific danger to public health and safety." Even further, while she also alleges violations of CMEA and 42 C.F.R. § 482.25, neither provision concerns a federal contract or grant.

In sum, Plaintiff's claim must be dismissed whether it is asserted under 10 U.S.C. § 2409 *or* 41 U.S.C. § 4712. Count II is accordingly dismissed with prejudice.

<u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 23) is GRANTED WITH PREJUDICE.

A separate Order follows.

Dated: June 29, 2016                                    _____/s/_____
                                                                         Richard D. Bennett
                                                                         United States District Judge